# United States Court of Appeals for the Federal Circuit

———————————

**MEYER INTELLECTUAL PROPERTIES LIMITED AND MEYER CORPORATION, U.S.,**
*Plaintiffs-Appellees,*

v.

**BODUM, INC.,**
*Defendant-Appellant.*

———————————

2011-1329

———————————

Appeal from the United States District Court for the Northern District of Illinois in case no. 06-CV-6329, Judge Milton I. Shadur.

———————————

Decided: August 15, 2012

———————————

JOSHUA C. KRUMHOLZ, Holland & Knight, LLP, of Boston, Massachusetts, argued for plaintiffs-appellees. Of counsel on the brief were R. DAVID DONOGHUE and DANIEL L. FARRIS, of Chicago, Illinois.

ROBERT S. RIGG, Vedder Price, P.C., of Chicago, Illinois, argued for defendant-appellant. With him on the brief were DAVID E. BENNETT, and WILLIAM J. VOLLER, III.

———————————

Before DYK, MOORE, and O'MALLEY, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* O'Malley.
*Circuit Judge* Dyk concurs.

O'MALLEY, *Circuit Judge*.

In this patent case, Meyer Intellectual Properties Limited and Meyer Corporation, U.S. (collectively, "Meyer") filed suit against Bodum, Inc. ("Bodum") in the United States District Court for the Northern District of Illinois, alleging that Bodum infringed two of Meyer's patents, both of which are directed to a method for frothing milk: U.S. Patent Nos. 5,780,087 ("the '087 Patent") and 5,939,122 ("the '122 Patent") (collectively, "the patents-in-suit"). Bodum counterclaimed for declaratory judgment of noninfringement and invalidity.

The district court granted Meyer's motions for summary judgment that Bodum's products infringed the patents-in-suit. Before proceeding to trial, the district court granted Meyer's motions *in limine* prohibiting Bodum from: (1) introducing and relying on certain prior art; (2) presenting certain testimony relating to that prior art; and (3) introducing any evidence to support its inequitable conduct claims. The jury returned a verdict in favor of Meyer, finding that the patents-in-suit were not proven to be invalid, finding that Bodum's infringement was willful, and awarding Meyer damages in the amount of $50,000. The district court subsequently denied Bodum's post-trial motions for judgment as a matter of law ("JMOL") and granted Meyer's motion requesting enhanced damages and attorney fees.

Bodum appeals from the district court's final judgment awarding damages and attorney fees to Meyer in the amount of $906,487.56. Judgment, *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, No. 06-cv-6329 (N.D. Ill. Feb.

16, 2011), ECF No. 237. On appeal, Bodum challenges several of the court's rulings. Specifically, Bodum challenges the district court's decisions: (1) granting summary judgment in favor of Meyer on infringement; (2) granting Meyer's motions *in limine* precluding Bodum from presenting certain prior art and testimony at trial; (3) denying Bodum's motion for JMOL that Bodum did not willfully infringe the patents-in-suit; (4) enhancing damages and awarding attorney fees in Meyer's favor; and (5) denying Bodum's renewed motion for JMOL and motion to alter the court's infringement decisions. For the reasons explained below, we reverse-in-part, vacate-in-part, and remand.

BACKGROUND

A.   Factual Background

1.   The Patents-in-Suit

Frank Brady ("Brady") is the sole inventor of the '087 and '122 Patents. For approximately ten years, from 1986 to 1996, Brady was an independent sales representative for Bodum, a company that designs and sells housewares products, including coffee makers, milk frothers, and other kitchen products. Tr. of Proceedings held on Nov. 12, 2010, *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, No. 06-6329 (N.D. Ill. Apr. 29, 2011), ECF No. 268 at 683:14-23. In that capacity, and as the Chief Executive Officer of Brady Marketing Company, Inc., Brady marketed and sold a number of Bodum's household products, including Bodum's French press coffee makers. Brady explained that he first conceived of a frother using aeration instead of steam in the mid-1990s, and that he introduced it for sale at a trade show in May 1996. Tr. of Proceedings held on Nov. 10, 2010, *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, No. 06-6329 (N.D. Ill. Apr. 29, 2011), ECF No. 267 at 466:3-467:2. Around that same

time, Brady began selling his frothers through his company BonJour, Inc. ("BonJour").

On September 23, 1996, Brady filed a patent application directed to a "Method for Frothing Liquids." That application became the '087 Patent, which issued on July 14, 1998. During prosecution of the application that resulted in the '087 Patent, the PTO examiner initially rejected Claim 1 as anticipated by a prior art reference: U.S. Patent No. 5,580,169 ("the Ghidini Patent"). In response, Brady amended the claim to provide: (1) a dimensional limitation requiring that the container have a height that is at least two times the diameter; and (2) a plunger with a screen and a spring, where the spring is "positioned about the circumference of the plunger body such that the spring is biased to hold the screen in place in contact with, though not sealably connected to, the container." With these changes, Claim 1 of the '087 Patent was allowed.

While the application that resulted in the '087 Patent was pending, Brady filed a continuation application that later became the '122 Patent. The '122 Patent issued on August 17, 1999.

The patents-in-suit, which share a common specification, are directed to a method for frothing liquids such as milk. Specifically, the patents relate to "an apparatus and method for frothing, which allows the user to obtain foamy, frothed milk without the use of a complicated steamer device." '087 Patent col.1 ll.5-10; '122 Patent col.1 ll.8-12.[1] The "Background of the Invention" explains that, at the time the application was filed, "[m]ost of the

---

[1] Despite the reference to an "apparatus" in the opening sections of the '122 Patent, there are no apparatus claims in that patent; only method claims are at issue here.

prior art foaming devices [were] complicated machines which involve the use of steam to aerate or foam the liquid." '087 Patent col.1 ll.12-15. The background section concludes with the statement that, "[w]hat is needed, and is lacking in the prior art, is a device to froth liquids, such as milk, which is simple to use, has no need for electricity or steam, and is relatively easy to clean and store." *Id.* at col.1 ll.64-67.

Generally speaking, the claims disclose four steps: (1) providing a container that has a height to diameter aspect ratio of 2:1; (2) pouring liquid (*e.g.*, milk) into the container; (3) introducing a plunger that includes at least a rod and plunger body with a screen; and (4) pumping the plunger to aerate the liquid. '087 Patent col.5 ll.20 – col.6 ll.8.

### 2.    Bodum's Accused Products

Meyer accuses three of Bodum's milk frothers of infringement: (1) the Chambord Frother Model No. 1964; (2) the Aerius Frother Model No. 1364; and (3) the Shin Bistro Frother Model No. 10492. Bodum began selling a first generation of accused milk frothers – referred to as the Version 1 frothers – in 1999. The Version 1 frothers departed from Bodum's previous non-electric milk frothers in that: (1) the carafe was taller and thinner; and (2) the plunger had a different construction involving a mesh and spring design. The following images show a comparison between Bodum's Version 1 Chambord Frother and the Figures from Meyer's '087 Patent:

Bodum Version 1

Chambord

Figure 1 of the '087

Patent

(JA005344)

FIG. 1



FIG. 8

Bodum Frother Components

B.  Procedural History

In May 2005, Brady sold his company – BonJour – to Meyer.  In the sale, BonJour transferred its intellectual property rights to Meyer, and it is undisputed that Meyer owns the patents-in-suit.

On November 20, 2006, Meyer filed suit against Bodum in the Northern District of Illinois, alleging infringement of the patents-in-suit.  In the Complaint, Meyer alleged that Bodum "has been and still is using, selling, offering for sale and/or importing one or more milk frother products for frothing liquids that infringe, directly, indirectly, contributorily and/or by inducement" the '087 Patent and the '122 Patent.  Complaint, *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, No. 06-cv-6329

(N.D. Ill. Nov. 20, 2006), ECF No. 1.  Meyer amended its complaint a year later, in November 2007, to add a claim for willful infringement.

On January 19, 2007, Bodum: (1) filed an answer asserting an affirmative defense of inequitable conduct; and (2) counterclaimed seeking a declaration that the asserted claims of the patents-in-suit are invalid and not infringed.

Roughly six months after it was served with the complaint, Bodum ceased manufacturing its Version 1 frothers and transitioned to Version 2 frothers with a new plunger design.  Bodum did not change the name or designation of its frother products.  According to Bodum, "[u]nlike the Version 1 plunger, the Version 2 plunger does not have a spring or other biasing element that holds the screen against the inside wall of the container or housing, and the screen does not extend beyond the diameter of the plunger plate." Appellant Br. 9.  Instead, the Version 2 plunger contains an O-ring around the circumference of the plunger body.  Bodum subsequently removed the O-ring from the Version 2 frother and began selling the new design as Version 3 in July 2008.

### 1.   Claim Construction

On May 14, 2008, the district court issued its claim construction order.  *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 552 F. Supp. 2d 810 (N.D. Ill. 2008) ("*Claim Construction Order*").  In that order, the court noted that the parties "agree[d] on which claims are in dispute and have submitted a joint letter identifying the disputed language." *Id.* at 812.  Consistent with the parties' request, the court limited its construction to certain language in Claim 1 of the '087 Patent and Claims 1 and 10 of the '122 Patent.  The bulk of the court's claim construction order is not relevant to resolution of this appeal so we do not discuss it in any detail.  Notably, however, the

parties did not ask the court to construe the phrase "providing a container" as it is used in Claim 1 of the patents-in-suit at this stage of the proceedings. *See* '087 Patent col.5 ll.23-25 ("providing a container characterized by a height and a diameter, the height being at least two times the diameter").

## 2.  Summary Judgment

On September 2, 2008, Meyer moved for partial summary judgment, arguing that, by providing its Version 1 frothers along with instructions for their use, Bodum induced others – specifically Meyer's own expert Albert Karvelis – to infringe the patents-in-suit.  In response, Bodum argued that: (1) Meyer failed to provide sufficient evidence of an intent to induce infringement; (2) Bodum could not induce infringement because it believed in good faith that the Meyer patents are invalid; (3) Bodum could not be liable for inducement because no single third party could perform all the steps in the patented claims, not even Mr. Karvelis; and (4) even if Mr. Karvelis had performed all of the steps of the method claims, his acts could not be acts of "infringement" since he was acting under an implied license created by the umbrella of the parties' litigation.

Two things are notable about the parties' summary judgment filings.  First, Meyer presented no evidence that anyone other than its own expert had directly "infringed" the '087 and '122 Patents.  Second, both parties discussed what it meant to "provide a container" for frothing though, again, neither expressly sought construction of that term.

On February 11, 2009, the district court granted Meyer's motion for partial summary judgment, finding that Bodum had induced infringement of certain claims in the '087 and '122 Patents by its sales of the Version 1

frothers. *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 597 F. Supp. 2d 790 (N.D. Ill. 2009) ("*Summary Judgment Version 1*").

Meyer then filed a second motion for partial summary judgment, this time arguing that Bodum's sale of its Version 2 and 3 frothers both directly infringed and induced infringement of the '122 Patent.[2] The court granted summary judgment of direct infringement and inducement as to the Version 2 frothers, but found genuine issues of material fact as to literal infringement with respect to the Version 3 frothers. *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 674 F. Supp. 2d 1015, 1022 (N.D. Ill. 2009) ("*Summary Judgment Version 2*"). The court began by noting that the '122 Patent includes a limitation that "substantially no liquid passes between the circumference of the plunger body and the inside wall of the container." *Id.* at 1017. Although Bodum attempted to design around this limitation by removing the O-ring from the Version 2 frother so that a greater amount of liquid could pass between the plunger and the container, Bodum "mistakenly produced and sold frothers with O-rings ("Version 2 frothers") during a period that began about July 2007 and ran through June 2008." *Id.*

Bodum argued that it could not be liable for infringement because Meyer did not offer evidence that Bodum itself performed each step of the method and Meyer offered no evidence that its customers did so. The court rejected this argument and reiterated its view that, if Meyer's patents are valid, Bodum's production and sale of the Version 2 frothers infringe directly and induce others to infringe.

---

[2]   Meyer did not assert the '087 Patent against either the Version 2 or Version 3 frothers.

### 3.   Motions *in Limine*

In April 2010, Meyer filed several motions *in limine.* Specifically, Meyer sought to: (1) bar Bodum's proffered expert, Robert John Anders ("Anders"), from testifying regarding his opinion that the patents-in-suit are invalid as obvious under 35 U.S.C. § 103; (2) prevent Bodum from relying on evidence it claims constitutes prior art, including documents Anders referred to in his report; (3) preclude Bodum from presenting any evidence regarding its inequitable conduct defense; and (4) prevent Bodum from introducing what Meyer characterized as previously undisclosed prior art references.

In a series of decisions, the district court granted all of Meyer's motions, limiting significantly the evidence Bodum could introduce at trial.  First, the court issued an order excluding Anders' opinion on obviousness and preventing him from testifying on that subject because he "advance[d] his opinion as a mere ipse dixit: 'Trust me – I know obviousness when I see it, and this is it.'"  *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 715 F. Supp. 2d 827, 830 (N.D. Ill. 2010).

Next, the district court issued an order barring Bodum from using prior art evidence not contained in Anders' report.  *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, No. 06-cv-6329, 2010 U.S. Dist. LEXIS 56168 (N.D. Ill. June 7, 2010).  Looking at Anders' report, the court found that it was divided into three sections – A, B, and C – and that, although Anders identified fifty-six items in Part A "as matters that [he] *reviewed* en route to his arrival at the opinions that he then sets out in Parts B and C," his "ensuing opinions themselves focused solely on just two of those many items as the actual predicates for his stated conclusions."  *Id.* at *4.  In other words, the court found that Anders limited the universe of prior art

and that Bodum's lawyers could not expand that scope. Finally, the court granted Meyer's motion to preclude Bodum from arguing that Brady engaged in inequitable conduct in obtaining the patents-in-suit. Specifically, the court found that Bodum's "inequitable conduct charge . . . failed to meet the demanding requirements" of materiality and intent. *Id.* at *6-9.

Bodum moved the court to reconsider both of its orders granting Meyer's motions *in limine*. In relevant part, Bodum argued that: (1) during discovery, Bodum identified and disclosed much of the contested prior art in its Second Supplemental Answers to Plaintiffs' Interrogatories 2 and 3; (2) it was improper for the court to use the Anders' report to limit the scope of prior art upon which Bodum could rely at trial; (3) the Anders' report is a single report with three component parts which should be read together; and (4) even if Bodum were limited to the references upon which Anders expressly relied, those references included a drawing of a Bodum French press container with dimensions which matched those disclosed in Meyer's '122 Patent.

In a decision dated October 7, 2010, the court denied Bodum's motion to reconsider. First, the court reiterated that Anders "considered a great deal of potentially relevant material and, having done so, settled on just two items as the relevant prior art." *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, No. 06-cv-6329, 2010 U.S. Dist. LEXIS 107169, at *3 (N.D. Ill. Oct. 7, 2010). Second, the court stated that:

> It simply will not do for Bodum to take an end run around its own chosen expert's opinion by adducing testimony from its own people, Jorgen Bodum and Thomas Perez, as to other items that they consider prior art, whether that testimony is ten-

dered under the rubric of Evid. R. 702 (the rule governing "expert" testimony) or of Evid. R. 701 (the rule that gives room for opinion testimony by lay witnesses).

*Id.* Accordingly, the court limited Bodum to only two of the references identified in Anders' report: (1) United States Reissued Patent, No. RE37,137 ("the Ghidini Reissue Patent"); and (2) a Bodum French Press container.

### 4.   Jury Trial

Beginning on November 8, 2010, the court conducted a jury trial to address three issues: (1) invalidity based on obviousness; (2) whether Bodum's infringement of the asserted claims was willful; and (3) damages.

On November 10, 2010, near the end of Meyer's case-in-chief, Meyer moved the court to preclude Bodum from introducing and using a modern version of the Bodum 3-Cup French Press as prior art on grounds that: (1) Bodum had no corroborating evidence tying the modern version to that which allegedly pre-dated the Meyer patents; and (2) it was an attempt to backdoor the court's prior rulings limiting the prior art on which Bodum could rely. The district court granted the motion on the second ground, and the Bodum 3-Cup French Press was not introduced as an exhibit at trial.

Also at the end of Meyer's case-in-chief, Bodum filed a motion for JMOL that it did not willfully infringe the asserted patents. The district court denied that motion on the record on November 15, 2010.

On November 17, 2010, the jury returned a verdict in favor of Meyer, finding that the patents-in-suit were not invalid and that Bodum's infringement was willful. The

jury awarded damages to Meyer in the requested amount of $50,000.

## 5.   Post-Trial Motions

Following the jury verdict, Meyer filed a motion asking the court to: (1) award treble damages pursuant to 35 U.S.C. § 284; (2) declare this case exceptional within the meaning of 35 U.S.C. § 285; and (3) award Meyer its attorney fees in the amount of $756,487.56.  In a decision dated February 16, 2011, the district court granted Meyer's motion, increased the jury's damage award to $150,000, and awarded Meyer its full attorney fees. *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 764 F. Supp. 2d 1004 (N.D. Ill. 2011) ("*Decision Awarding Attorney Fees*").

Bodum subsequently filed two post-trial motions. First, Bodum filed a renewed motion for JMOL, again asking the court to find that Bodum did not willfully infringe the patents-in-suit.  In that motion, Bodum argued that: (1) it did not have knowledge of the '087 and '122 Patents prior to the filing of the complaint; (2) Meyer failed to move for a preliminary injunction, and thus could not show willful infringement under *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc); (3) Bodum's efforts to design around the patents-in-suit demonstrate that it was not objectively reckless; and (4) Bodum raised substantial questions of non-infringement and invalidity.

Second, Bodum moved the court pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to alter its previous decisions granting summary judgment of infringement.  In that motion, Bodum asked the court to revisit its prior decisions in light of this court's December 2010 decision in *Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 629 F.3d 1311 (Fed. Cir. 2010), *vacated*,

419 F. App'x 989 (Fed. Cir. 2011). Specifically, in light of *Akamai*, Bodum argued that the court should withdraw its findings of direct infringement because: (1) Meyer failed to show that Bodum performed every step of the asserted claims; (2) the claims are incapable of being directly infringed by a single third party; and (3) there is no direct infringement under a divided infringement or joint infringement theory because Bodum's customers are not agents of Bodum, and are not obligated to use the frothers in any particular way.

The district court conducted a hearing on March 14, 2011, and denied both of Bodum's post-trial motions on the record. First, the court denied Bodum's renewed JMOL for the reasons previously stated on the record at the conclusion of Meyer's case in chief. With respect to Bodum's Rule 59(e) motion, the district judge explained that he reviewed *Akamai* and noted that "joint liability may be found when one party 'controls or directs' the activities of another party." Tr. of Proceedings held on Mar. 14, 2011, *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, No. 06-cv-6329 (N.D. Ill. Apr. 29, 2011), ECF No. 272, at 4:19-21. The judge then stated that the patented method here "has only one intended goal. That is the production of froth liquid such as milk. And the devices marketed by Bodum have exactly that function. This isn't a matter of purchasers that – that where the devices that Bodum's customers choose among several possible means of accomplishing a purpose." *Id.* at 6:1-7. The court concluded that it "would be a solipsism if you permitted an escape for a party that practices the method up to the point of its ultimate utilization . . . ." *Id.* at 7:11-16. Accordingly, the court found no basis to reverse its prior rulings granting summary judgment in Meyer's favor.

Bodum timely appealed several of the district court's decisions to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

On appeal, Bodum argues that the district court erred when it: (1) granted summary judgment of direct infringement and inducement of the asserted method claims, despite the lack of evidence that any one party – including Bodum – actually performed each step of the asserted claims; (2) made several evidentiary rulings that made it impossible for Bodum to present its case; (3) dismissed Bodum's affirmative defense of inequitable conduct on a motion *in limine*; and (4) denied Bodum's JMOL of no willful infringement. We address each of these issues in turn.

### A. Infringement

The district court issued two separate decisions granting summary judgment that Bodum directly infringed and induced infringement of the patents-in-suit. First, with respect to Bodum's Version 1 frothers, the court found that: (1) Bodum conceded direct infringement; and (2) whenever a Bodum customer uses its milk frother and follows the instructions contained therein, that customer directly infringes the patents-in-suit, and Bodum induces the same as a matter of law. *Summary Judgment Version 1*, 597 F. Supp. 2d at 794, 798-99. Bodum moved the district court to clarify its decision, arguing that it could not be a direct infringer because it only practices the first step of the claim – "providing a container" – and its customers could not be direct infringers because, while they practice each of the other steps, they do not practice the "providing" step. The district court judge conducted a status hearing and explained to Bodum that:

> I took a look at the box that contains this plunger. And everything that you have done is everything except hold the customer's hand on the plunger. I mean you know, you have given the direct – you have got essentially a one purpose invention. And you have done everything, including the first step to practice the thing, because again all that you lack is putting your client's hot hand on the plunger, because you instructed the customer, "Here is how you use the thing."

Tr. of Proceedings held on May 1, 2009, *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, No. 06-cv-6329 (N.D. Ill. May 5, 2011), ECF No. 273 at 5:12-20. Accordingly, the court denied Bodum's motion to clarify.

The district court subsequently granted Meyer's motion for summary judgment that Bodum's sale of the Version 2 frothers infringe the claims of the '122 Patent, finding that: (1) Bodum must have tested its products before putting them on the market; and (2) "[t]hough Meyer does not provide evidence of specific instances of direct infringement by Bodum's customers, such proof is not required because . . . Version 2 'necessarily infringes' the patented method when operated as directed." *Summary Judgment Version 2*, 674 F. Supp. 2d at 1018, 1021.[3]

We review the district court's grant of summary judgment without deference, drawing all reasonable inferences in favor of the nonmoving party. *King Pharm., Inc. v. Eon Labs., Inc.*, 616 F.3d 1267, 1273 (Fed. Cir. 2010). Summary judgment is appropriate when there are

---

[3] After trial, the court denied Bodum's Rule 59(e) motion to alter the court's prior summary judgment decisions, reiterating that Bodum's products have one goal – to froth milk – and that Bodum cannot avoid liability by claiming that it does not use the device.

no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Evaluating a district court decision granting summary judgment of infringement requires two steps: (1) claim construction; and (2) comparison of the properly construed claims to the accused product or process. *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1288 (Fed. Cir. 2009).

Where, as here, the asserted patent claims are method claims, the sale of a product, without more, does not infringe the patent. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010) (citation omitted). Instead, direct infringement of a method claim requires a showing that every step of the claimed method has been practiced. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009).

Under 35 U.S.C. § 271(b), a party who "actively induces infringement of a patent shall be liable as an infringer." To prevail on an inducement claim, a patentee must establish that: (1) there has been direct infringement; (2) the defendant, with knowledge of the patent, actively and knowingly aided and abetted such direct infringement. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (en banc). It is well-established that a finding of direct infringement is a prerequisite to a finding of inducement. *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1341 (Fed. Cir. 2008) ("[A] finding of inducement requires a threshold finding of direct infringement.").

On appeal, Bodum argues both that the district court assumed that acts of direct infringement occurred when there was no evidence in the record that they did and that the district court misapplied the law with respect to inducement in the context of method claims. According to

Bodum, because there was no evidence that any single party, including Bodum itself, actually performed each step of the asserted method claims, there can be no finding of direct infringement or inducement. Since this court's decision in *Akamai* has been vacated pending *en banc* review, Bodum relies upon our decision in *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007) to support its argument.

Meyer responds that: (1) as the district court held, Bodum waived its direct infringement argument with respect to Version 1; and (2) Bodum's own witnesses admitted actual use of Bodum's Version 1 and Version 2 frothers during testing of the frothers. Notably, Meyer abandons its argument that a finding of infringement can be premised on the acts of its own expert during the course of litigation. Meyer neither cites nor discusses *BMC* in its brief to this court.[4]

For the reasons discussed below, we conclude that the district court erred in granting summary judgment of infringement with respect to both the Version 1 and Version 2 frothers because the record was inadequate to support such a conclusion as a matter of law. In reaching this conclusion, we find no reason to discuss or apply this court's case law on divided infringement or to await its clarification *en banc* because we find that, properly con-

---

[4]   On appeal, Bodum separately argues that its Version 2 frother cannot infringe because it does not have a spring biasing screen, as is required in Claims 19 and 23 of the '122 Patent. In response, Meyer argues that: (1) there is no spring limitation in Claims 19 or 23 of the '122 Patent; and (2) the O-ring present in the Version 2 frother is the equivalent of the spring specified in certain claims of the patents-in-suit. Appellees' Br. 54-55. Because we find issues of material fact with respect to direct infringement and inducement, we need not address Bodum's additional arguments at this stage.

strued, each step of the method claims could be performed by a single user.

## 1.  Waiver

First, we disagree with the district court's finding that Bodum conceded direct infringement as to its Version 1 frother. In its initial motion seeking summary judgment, Meyer's sole argument with respect to direct infringement was that "literal and direct infringement exists by one, such as *Meyer's* expert, Albert Karvelis, when practicing the method prescribed in Bodum's instructions while using Bodum's accused milk frothers." Mem. in Supp. of Pls.' Mot. for Partial Summ. J., *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, No. 06-cv-6329, (N.D. Ill. Sept. 2, 2008), ECF No. 90 at 8 (emphasis added). Meyer did not argue that anyone other than Mr. Karvelis practiced each step of the claimed method by using Bodum's Version 1 frother. Nor did Meyer offer evidence of or even argue that anyone at Bodum ever practiced every step of the method claim or that there was any known customer who did so.

In response, Bodum both rejected the notion that Mr. Karvelis' actions could constitute acts of infringement and argued that no single person or entity – not even Mr. Karvelis – could perform all steps of the method claim because Bodum itself practiced the "providing a container" step, and only that step. Recognizing that induced infringement requires proof of both direct infringement and that the alleged inducer knowingly aided and abetted that direct infringement, Bodum argued that:

> Meyer's allegation of direct infringement is improper for at least the reason that, as drafted, no one party can directly infringe any of the independent method claims. Only Bodum performs the first step of each independent claim, the step

of providing a container or housing associated with its Accused Products.  The remaining steps are each performed only by Bodum's customers.  As a result there is no direct infringement and consequently, no inducement.

Def.'s Mem. in Opp'n, *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, No. 06-cv-6329, (N.D. Ill. Nov. 21, 2008), ECF No. 99 at 13.  Given this language, we find that the district court erred in concluding that Bodum "raise[d] no defense to the argument that its products directly infringed the Meyer Patents." *Summary Judgment Version 1*, 597 F. Supp. 2d at 794.  In these circumstances, we agree with Bodum that no waiver occurred.

## 2.   Claim Construction

Resolution of the parties' dispute turns, in large part, on the construction of the term "providing" as it is used in the patent claims.  Claim construction is an issue of law subject to *de novo* review on appeal.  *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).

To ascertain the scope and meaning of the asserted claims, we look to the claim language, the specification, the prosecution history, and any relevant extrinsic evidence.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315-17 (Fed. Cir. 2005) (en banc).  As a general rule, a claim term is given the plain and ordinary meaning as understood by a person of ordinary skill in the art at the time of invention.  *Id.* at 1312-13.

Although claim construction begins with the language of the claims themselves, the claims "must be read in view of the specification, of which they are a part." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc).  Indeed, the specification "is the single

best guide to the meaning of a disputed term" and it "acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Phillips*, 415 F.3d at 1321 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). We have also recognized that dictionaries "are often useful to assist in understanding the commonly under-stood meaning of words." *Id.* at 1322. As such, we have held that judges are free to rely on dictionary definitions when construing claims, "so long as the dictionary defini-tion does not contradict any definition found in or ascer-tained by a reading of the patent documents." *Id.* at 1322-23 (quoting *Vitronics*, 90 F.3d at 1584 n.6).

As noted, representative Claim 1 of the '087 Patent generally discloses four steps: (1) providing a container with a 2:1 height to diameter ratio; (2) pouring milk into the container; (3) introducing a plunger; and (4) pumping the plunger to aerate the liquid. The parties' summary judgment arguments, and the district court's ruling thereon, focused on the first step: "providing a container." It is undisputed that the patents-in-suit do not explicitly define the term "providing."

During claim construction, neither party asked the court to construe the term "providing." Although claim construction is a question of law, we are generally hesi-tant to construe claim terms for the first time on appeal. *Wavetronix v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1355 (Fed. Cir. 2009). Under the circumstances of this case, however, we find it appropriate to do so. While the parties specifically addressed the meaning and scope of this term in their summary judgment briefing to the district court, the court did not formally construe the claim term because it found no reason to do so. Instead, the court found that Bodum could be liable for induced infringement even if it, and only it, performed the provid-

ing step because Bodum thereafter directed its customers on how to perform the remaining steps of the claim. Because the record is sufficiently developed to enable us to construe the term, and because the parties' debate really focuses on the scope, rather than the meaning of the claim terms, we choose to address the question the trial court sidestepped.

In opposition to Meyer's motion for summary judgment, Bodum supplied the following dictionary definition for the word "provide": "1. To furnish; supply. 2. To make available; afford. 3. To set down as a stipulation. 4. Archaic: To make ready ahead of time; prepare." Am. Heritage College Dictionary 1102 (3d ed. 2000). Bodum argued that, because it supplies, furnishes, and otherwise makes the accused products available for sale, it is the only party that can carry out the providing step. In its reply, Meyer agreed that providing should be given its common ordinary meaning, but argued that "there is no limitation in the claims on who does the 'providing,' and none exists. Bodum can do the providing or the end user completing the claimed method steps can do the providing. In either event, direct infringement occurs." Reply in Supp. of Pls.' Mot. for Partial Summ. J., *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, No. 06-cv-6329, (N.D. Ill. Dec. 5, 2008), ECF No. 105 at 13.

In its decision granting summary judgment as to Bodum's Version 1 frothers, the district court acknowledged Bodum's proffered dictionary definition and its argument that, because an end user "cannot 'provide' the container as called for by the claims," Bodum does not induce infringement. *Summary Judgment Version 1*, 597 F. Supp. 2d at 798. Rather than analyze the scope of the term "providing," however, the district court found that, even under Bodum's definition, Bodum's argument fails because "it impermissibly distorts the fundamental con-

cept of patent infringement." *Id.* Specifically, the court held that, "[w]hen any end user 'uses' a Bodum milk frother – a container – that has been 'provided' by Bodum, and in doing so follows Bodum's instructions detailing the steps to be taken in such use of the frother . . . it thus directly infringes the Meyer Patents." *Id.* at 798-99. Notably, however, nothing in the district court's decision suggests that Bodum is the *only* party that can "provide" the container for use.

After careful review of the intrinsic evidence, we find that nothing in the claim language or the patent specification limits the "providing" step to a specific party. Under Bodum's proffered dictionary definition, it is clear that Bodum "furnishes" or "supplies" the container by manufacturing and selling its milk frothers. It is also clear under that same definition, however, that anyone who takes a Bodum frother from the kitchen cabinet and places it on the counter before filling it with milk can satisfy the "providing" step. That person has undoubtedly made the container available for use and prepared it for frothing. Accordingly, we construe the term "providing" to mean "furnishing, supplying, making available, or preparing" and find that anyone – Bodum or the end user of its products – can satisfy the providing step. Given this construction, we find that the claims at issue here are drawn to actions that can be performed by a single party.

### 3. Direct Infringement

Having concluded that a single party is capable of infringing the patents-in-suit, we move to the parties' arguments regarding infringement. We turn first to the issue of direct infringement. As noted, in its motion for summary judgment with respect to Bodum's Version 1 frother, Meyer's only evidence of direct infringement was the activities of Meyer's own expert. On appeal, Bodum

argues that Meyer did not introduce any evidence that either Bodum or its customers used the claimed method. Meyer responds that Bodum's witnesses conceded use. Again, Meyer does not argue that there was evidence of customer infringement. For the reasons explained below, we agree with Bodum that the district court's judgments of infringement as to both the Version 1 and Version 2 frothers suffer from the same deficiency: there was no evidence of direct infringement in the record.

As to the Version 1 frothers, the district court relied only on its conclusion that Bodum had conceded direct infringement, though the court never explained to whom that concession pertained. Because we find that Bodum made no such concession, Meyer points to no other evidence of direct infringement as to the Version 1 frothers, and we find none in the underlying summary judgment papers, we conclude that the trial court erred in finding direct infringement as a matter of law as to those frothers.

In its decision granting Meyer summary judgment with respect to the Version 2 frothers, the district court rejected Bodum's argument that Meyer failed to prove direct infringement. Specifically, the court found it unbelievable that "an established company such as Bodum would have placed Version 2 and later Version 3 on the market for public sale, and would have kept those products on the market for substantial periods of time, without having first confirmed for itself that each product would perform its allotted task . . . ." *Summary Judgment Version 2*, 674 F. Supp. 2d at 1018. In other words, the court assumed that Bodum must have tested its products. Given this assumption, the court concluded that Bodum's use of the '122 Patent method "has been established as a matter of law." *Id.*

We find it troubling that the district court based its direct infringement analysis on what it assumed happened, rather than on actual evidence of record. This assumption contradicts our well-established law that a patentee must prove infringement by a preponderance of the evidence. *See Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1279 (Fed. Cir. 2011) ("Patent infringement, whether literal or by equivalence, is an issue of fact, which the patentee must prove by a preponderance of the evidence."). And, by assuming testing without any evidence in the record, the court improperly drew an inference in favor of Meyer and against Bodum. Because factual inferences must be drawn in favor of the nonmoving party on summary judgment, we find that the district court's decision cannot stand. *See IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000) (noting that, on summary judgment, "[w]e view the evidence in a light most favorable to the non-movant, and draw all reasonable inferences in its favor").

For the first time on appeal, Meyer cites to deposition testimony from Bodum's President, Thomas Perez, as evidence that Bodum used the claimed method in testing and developing its frothers. Specifically, Meyer points to Perez's testimony that Bodum's design team always tests each of its products. Bodum argues that Meyer's reliance on this testimony is misplaced because the portions cited were neither submitted with the motions for summary judgment nor introduced at trial. In addition, Bodum points to the testimony of Jorgen Bodum, Bodum's Chief Executive Officer (hereinafter referred to as "Jorgen"), that he conducts product development with his design team which consists of five people in Hong Kong and fifteen people in Switzerland. In other words, there is no

evidence that Bodum used or tested its milk frother products in the United States.

We agree with Bodum that Meyer cannot for the first time on appeal introduce deposition testimony that was not before the district court when it was deciding the motions for summary judgment. And, given Jorgen's trial testimony that Bodum's product development team is located in Hong Kong and Switzerland, Meyer has not – at this stage – shown any instances of direct infringement in the United States. Because direct infringement of a method claim requires that each of the claimed steps are performed within the United States, the evidence of record is insufficient as a matter of law to support the court's decision granting summary judgment. *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005) ("We therefore hold that a process cannot be used 'within' the United States as required by section 271(a) unless each of the steps is performed within this country.").

Based on the foregoing, we find that Meyer failed to point to specific instances of direct infringement and failed to offer any evidence that someone at Bodum used its Version 1 and Version 2 frothers. Accordingly, we find that there are genuine issues of material fact as to whether anyone at Bodum practiced each step of the asserted method claims.

We now turn to the trial court's conclusion that Bodum intended that its customers would use the frothers to produce froth liquid and that the act of frothing thereafter would constitute direct infringement. While it may be true that Bodum's customers may be characterized as direct infringers under our now-controlling construction of the providing step, Meyer never argued at the summary judgment stage that they were, and it does not make that

argument here. Indeed, Meyer presented no evidence in support of its motion for summary judgment regarding either product sales or customer use; it relied only on Mr. Karvelis' testing of the product. Judgment as a matter of law on such a sparse record is simply not appropriate.

Because we conclude that genuine issues of material fact remain, we reverse the district court's grant of summary judgment with respect to Bodum's Version 1 and Version 2 frothers and remand for further consideration in light of our construction of the term "providing."

### B. Evidentiary Rulings

We turn next to Bodum's challenges to the district court's evidentiary rulings. On appeal, Bodum argues that the district court improperly: (1) excluded Bodum's primary prior art, including Bodum's 3-Cup French Press; (2) barred Bodum's expert witness – Anders – from testifying that the asserted patents were invalid for obviousness; and (3) precluded Jorgen from testifying about the Bodum 3-Cup French Press. Given these rulings, Bodum argues that it was stripped of its ability to present its obviousness defense at trial.

We review the district court's decision to exclude evidence under the law of the relevant regional circuit. *Research Corp. Techs. v. Microsoft Corp.*, 536 F.3d 1247, 1255 (Fed. Cir. 2008) ("The Federal Circuit applies its own law with respect to issues of substantive patent law and certain procedural issues pertaining to patent law, but applies the law of our sister circuits to non-patent issues.") (citation omitted). The Seventh Circuit – the pertinent regional circuit in this case – reviews evidentiary rulings for an abuse of discretion. *Von Der Ruhr v. Immtech Int'l, Inc.*, 570 F.3d 858, 862 (7th Cir. 2009) (noting that "decisions regarding the admission and

exclusion of evidence are peculiarly within the competence of the district court") (citation omitted).

In the Seventh Circuit, appellate review of evidentiary rulings is limited to determining "whether an 'error in either the admission or the exclusion of evidence' was made which affected 'the substantial rights' of the plaintiffs." *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1266 (7th Cir. 1988) (quoting Fed. R. Civ. P. 61). Generally speaking, "the test of whether a substantial right of a party has been affected is whether the error in question affected the outcome of the case." 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 103.41[2] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2011).

More recently, the Seventh Circuit held that "[n]o error in either the admission or exclusion of evidence is ground[s] for . . . vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice." *Thompson v. City of Chicago*, 472 F.3d 444, 455 (7th Cir. 2006) (quoting *Goodman v. Illinois Dept. of Fin. & Prof. Reg.*, 430 F.3d 432, 439 (7th Cir. 2005)). The court recognized that "[e]ven an erroneous evidentiary ruling can be deemed harmless if the record indicates that the same judgment would have been rendered regardless of the error." *Id.* (quoting *Goodman*, 430 F.3d at 439). Accordingly, Bodum must show both that the district court erred in excluding evidence and that the exclusion prejudiced its substantial rights.

For the reasons explained below, we find that the district court abused its discretion in granting Meyer's motions *in limine* and that these evidentiary errors were prejudicial because they prevented Bodum from presenting its obviousness defense. Accordingly, we vacate and

remand for a new trial to address whether the asserted claims are invalid as obvious.

## 1.  Prior Art

As previously noted, the district court granted Meyer's motions *in limine* and limited the universe of prior art on which Bodum could rely.  In particular, the court found that: (1) Bodum's discovery responses "identified a not particularly extensive group of [prior art] items"; and (2) Anders reviewed the fifty-six items listed in Part A of his report but then "focused solely on just two of those many items as the actual predicates for his stated conclusions."  *Meyer v. Bodum*, 2010 U.S. Dist. LEXIS 56168, at *2-4.  In its proposed list of exhibits in the Final Pretrial Order, however, Bodum included what the court characterized as a "laundry list" of prior art exhibits.  Because it found that Bodum's discovery responses and expert report narrowed the relevant prior art, the court found that Bodum could rely only on two items of prior art at trial: the Reissue Ghidini Patent and the Bodum French 3-Cup French Press.  As discussed below, moreover, at trial, the court *further* limited Bodum's introduction of evidence to exclude the Bodum 3-Cup French Press.

Bodum explains that, prior to trial, its invalidity position was that each claim of the '087 and '122 Patents is made obvious by a combination of the Bodum 3-Cup French Press and the Reissue Ghidini Patent.[5]  According

---

[5]  Bodum was not allowed to use the Ghidini Reissue Patent as prior art because it did not pre-date the patents-in-suit.  It was, however, permitted to use the original Ghidini patent – United States Patent No. 5,580,169 ("the '169 Patent") – which predated the asserted patents, and both Ghidini Patents were admitted at trial.

to Bodum, its 3-Cup French Press "teaches all of the elements required in the '087 and '122 Patents with the exception of using a coffee press as a frother," and the Reissue Ghidini Patent teaches a method for frothing milk in a container with a plunger assembly. Appellant's Br. 17. Bodum contends that, had it been permitted to offer the wrongfully excluded exhibits, "it would have been clear to the jury that the combination of at least the Bodum 3-Cup French Press and the Reissue Ghidini Patent show all of the features of the claimed invention." *Id.* at 20.

On appeal, Bodum argues that the district court erred when it excluded its 3-Cup French Press as well as the other prior art that was disclosed both during discovery and in Anders' report. In response, Meyer argues that Bodum's prior art was not properly disclosed and that the relevant scope of prior art was narrowed by Bodum's own expert. We disagree with Meyer.

We turn first to the district court's exclusion of prior art that Bodum disclosed in its interrogatory responses. During discovery, Meyer asked Bodum to identify and explain the factual bases for Bodum's claim that the patents at issue were invalid. In its Second Supplemental Answers to Interrogatories 2 and 3, Bodum identified, among other things, its prior Chambord French Press products, the Insta-Brewer French Press coffee maker, which "includes a container that is at least twice as tall as it is wide and includes a plunger structure," advertisements for the Insta-Brewer showing that it was available for sale in 1965, a still frame image from the movie "The Ipcress File" which showed use of the Insta-Brewer in 1965, the file history of the Reissue Ghidini Patent, and catalogs showing that the Bodum 3-Cup French Press was offered for sale in the United States prior to 1995. Indeed, at oral argument, counsel for Meyer conceded that,

at a minimum, the following prior art was disclosed in Bodum's interrogatory responses: "certainly the 3 cup was in there, the Ghidini Patent was in there, there was also, I think, a digital image from a movie, there was also a catalog." *See* Oral Argument at 17:45, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2011-1329/all.

Turning to the prior art discussed in Anders' report, careful review of Part C reveals that Anders' opinion on obviousness was not, as the district court found, limited to just two pieces of prior art. Indeed, Part C of the report specifically references: (1) the Ghidini Reissue Patent; (2) the Bodum French Press; and (3) the "drawing of a Bodum French press container dated 6.2.84 with Bates number B01781 shows a container having a height that is two times the diameter." J.A. 4378. The district court trifurcated Anders' report and found that the list of documents included in Part A were not relied upon with respect to obviousness because they were not substantively discussed in Part C. The fact remains, however, that those references in Part A – including the Bodum Chambord 3-cup coffee maker and catalog pages of Bodum products – were included in the expert report and were, thus, provided to Meyer.

Even assuming we agree with the district court that Anders relied only on the specific prior art listed in Part C for his obviousness opinion, the district court still erred in using the Anders' report to limit Bodum's ability to present, through other witnesses at trial, prior art that was previously disclosed during discovery. If anything, the scope and content of Anders' report should operate only to limit his testimony at trial – not the testimony of any other witnesses.

Meyer concedes that it received Bodum's interrogatory responses, and thus was on notice of Bodum's intent to use the prior art included therein.[6] Meyer nonetheless contends the court was correct to prohibit reliance on that art at trial, however. During oral argument, counsel for Meyer explained that, although it knew about the prior art in Bodum's discovery responses, "there was a further narrowing as to what the case was going to be . . . in the expert report." Oral Argument at 19:40. Counsel explained that the district court ultimately precluded Bodum's expert from testifying as to obviousness, and that the court "felt that this [other prior art disclosed during discovery] should not come in without expert testimony coming in with it because it was just going to lead to speculation from the jury." *Id.* at 23:54.

Where, as here, the technology involved is simple, we can think of no explanation for excluding prior art that was disclosed in interrogatory responses but was not relied upon in an expert report. As this court recently reiterated, "[t]here is no invariable requirement that a prior art reference be accompanied by expert testimony." *In re Brimonidine Patent Litig.*, 643 F.3d 1366, 1376 (Fed. Cir. 2011) (citation omitted). It is well-established, more-

---

[6] In its decision, the district court stated that Bodum never supplemented its initial discovery responses and that "Bodum's initial response has set the outer boundaries of the potential 'prior art' universe." *Meyer*, 2010 U.S. Dist. LEXIS 56168, at *2. To the contrary, however, Meyer admits in its briefing in support of its motion *in limine* that it received, and was relying upon, Bodum's Second Supplemental Answers to Plaintiffs' Interrogatories Nos. 2 and 3 dated March 18, 2009. Mem. in Supp. of Pls.' Mot. *in Limine*, *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, No. 06-cv-6329 (N.D. Ill. Apr. 29, 2010), ECF No. 167, at 2 n.1. As such, the district court erred in finding that Bodum did not supplement its discovery responses.

over, that, where the technology involved is easily understandable, expert testimony is not required. *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1242 (Fed. Cir. 2010); *see also Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1369 (Fed. Cir. 2004) ("In many patent cases expert testimony will not be necessary because the technology will be 'easily understandable without the need for expert explanatory testimony.'" (citation omitted)).

The district court's evidentiary errors improperly narrowed the scope of prior art that Bodum could introduce at trial and prevented Bodum from using its primary piece of prior art – the Bodum 3-Cup French Press. Because we find that the court's erroneous evidentiary rulings prejudiced Bodum's ability to present its invalidity defense, we vacate and remand for a new trial on obviousness.

### 2. Expert Testimony

Bodum next argues that the district court erred in granting Meyer's motion to exclude Anders' testimony. In response, Meyer contends that Anders offered a conclusory opinion with no explanation or support and that the district court properly excluded his testimony under Rule 26(a) of the Federal Rules of Civil Procedure.[7]

Rule 26(a) requires disclosure of a written expert report that contains "a complete statement of all opinions

---

[7] On appeal, Meyer also argues that the district court relied on Rule 702 of the Federal Rules of Evidence in excluding Anders, and that this court can only reverse the district court's ruling if it is "manifestly erroneous." Appellees' Br. 34-35. Notably, however, Meyer moved to bar Anders' testimony solely under Rule 26 – not Rule 702. And, although the district court's decision briefly mentions Rule 702, the court focuses its analysis on Rule 26(a)(2)(B)(i).

the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). The purpose of this rule is "to convey the substance of the expert's opinion . . . so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert if necessary." *Walsh v. Chez*, 583 F.3d 990, 994 (7th Cir. 2009).

In the patent context, an expert report that merely lists a number of prior art references and concludes that one skilled in the art would find the claims obvious is deficient under Rule 26. *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008). In *Innogenetics*, for example, we found that the expert's report failed to "state how or why a person ordinarily skilled in the art would have found the claims . . . obvious in light of some combination of those particular references." *Id.* Given this deficiency, we affirmed the district court's decision precluding the expert's vague and conclusory testimony regarding obviousness. *Id.* at 1374.

Here, the district court found that Anders' report failed to comply with Rule 26, and that Anders advanced "his opinion as a mere ipse dixit . . . ." *Meyer*, 715 F. Supp. 2d at 830. In reaching this decision, the district court relied heavily on *Innogenetics*, suggesting that it "might well have been written for this case." *Id.* We disagree. Unlike the situation in *Innogenetics*, here, Anders' report does more than merely list prior art references and provide a conclusion of obviousness.

First, Anders defined a person of ordinary skill in the art as someone who has "an undergraduate degree in industrial design or mechanical engineering, with one to three years experience" or, in the alternative, "a person without a degree but with five or more years of practical experience in the consumer products or housewares industry." Expert Report of Robert John Anders, *Meyer*

*Intellectual Props. Ltd. v. Bodum, Inc.*, No. 06-cv-6329 (N.D. Ill. Nov. 16, 2010), ECF No. 217 at 27. Anders then provided detailed claim charts comparing the asserted claims to the relevant prior art. As previously noted, the claim charts in Part C of Anders' report identify three items of prior art: (1) the Ghidini Reissue Patent; (2) the Bodum French Press; and (3) the "drawing of a Bodum French press container dated 6.2.84" with a height that is two times the diameter.

In his report, Anders explained that "a designer of ordinary skill in the art at the time of the claimed invention would have been familiar with the methods for aerating milk based liquids as well as with the structure of the French press apparatus, and thus the combination would have been obvious to said designer." *Id.* at 29. In Anders' opinion, all Brady did was "copy an old apparatus which was also known to be capable of frothing milk . . . and fabricate a 'method' that was in fact also old and well known and detailed in the prior art patents." *Id.* Given these circumstances, Anders concluded that the patents-in-suit are invalid for obviousness.

Careful review of Anders' report reveals that it contains a sufficiently detailed statement of his opinions and the bases for his conclusions. This is particularly true given that the technology involved in this case – using a plunger to froth milk in a container – is not complex. According to Anders, the patents-in-suit are obvious because one skilled in the art would have been motivated based on familiarity with the prior art to combine the known method for aerating milk in a frother with the structure of a French press. In other words, Anders invoked the common sense of one skilled in the art as evidence of motivation to combine prior art references. Given the technology involved, we find no fault in Anders' reliance on common sense in rendering his obviousness

opinion. Indeed, this court has specifically recognized that the common sense of one skilled in the art can play a role in the obviousness analysis. *See Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009) (holding that "an analysis of obviousness . . . may include recourse to logic, judgment, and common sense available to the person of ordinary skill [which] do[es] not necessarily require explication in any reference or expert opinion").

Because the technology involved is simple and common sense would motivate one of skill in the art to make the combination, Anders' report is sufficiently detailed. Accordingly, we conclude that the district court abused its discretion when it excluded Anders' testimony. We further find that the exclusion of Anders' testimony was not harmless because it impaired Bodum's ability to present its obviousness defense. And, as Bodum points out in its brief, while Meyer's expert was permitted to testify as to why the patent was not obvious, the exclusion of Anders' testimony made it look as though Bodum had no rebuttal.

### 3. Lay Testimony

Prior to trial, the district court ruled that Bodum could not introduce testimony from lay witnesses to expand the scope of prior art on which its expert relied. Although Bodum intended to have Jorgen introduce and authenticate a Bodum 3-Cup French Press at trial, the district court ultimately prohibited any such testimony on grounds that it was an impermissible attempt to "backdoor" the court's prior orders excluding prior art.

On appeal, Bodum argues that the district court erred in refusing to let Jorgen testify to issues that were within his personal knowledge, including the Bodum 3-Cup French Press and catalogs and drawings depicting the features of that device prior to the filing of the applica-

tions that resulted in the patents-in-suit. In response, Meyer argues that the district court acted within its discretion in refusing to let Jorgen testify because uncorroborated testimony from interested parties is insufficient to invalidate a patent under the so-called *Barbed Wire* doctrine.

The *"Barbed Wire* doctrine" provides that "[c]orroboration is required of any witness whose testimony alone is asserted to invalidate a patent." *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1159 (Fed. Cir. 2004) (citation omitted); *see also Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331, 1339 (Fed. Cir. 2005) ("The law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony.") (citation omitted). We have explained that this requirement "arose out of a concern that inventors testifying in patent infringement cases would be tempted to remember facts favorable to their case by the lure of protecting their patent or defeating another's patent." *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577 (Fed. Cir. 1996); *see also Barbed Wire Patent*, 143 U.S. 275, 284 (1892) (recognizing that testimony regarding invalidity can be "unsatisfactory" given "the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury . . . .").

Bodum argues that the *Barbed Wire* doctrine does not apply here because: (1) the district court did not rely on it in excluding the testimony; and (2) Bodum is not relying on oral testimony alone to prove invalidity. We agree with Bodum on both points.

First, as noted, the district court excluded Jorgen's testimony on grounds that its proffer was an attempt to "backdoor" the judge's prior ruling excluding Anders' expert testimony. *Meyer*, 2010 U.S. Dist. LEXIS 107169, at *3. Nowhere in that order did the court cite to or rely upon the *Barbed Wire* doctrine. When counsel for Meyer invoked the *Barbed Wire* doctrine on the record during trial, the court reiterated its earlier order limiting Bodum's prior art and simply stated that: "whether it happens to be supported or not by the barbed wire theory, which I think tends to sort of, in a way, corroborate it, is really not the point. So I am not permitting it." Tr. of Proceedings held on Nov. 10, 2010, *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, No. 06-cv-6329 (N.D. Ill. Apr. 29, 2011), ECF No. 267 at 459:13-460:17. Accordingly, the record reveals that the district court did not base its decision on the *Barbed Wire* doctrine.

Second, Meyer's reliance on the *Barbed Wire* doctrine is misplaced because Bodum did not seek to rely on uncorroborated oral testimony to establish invalidity. Instead, Bodum proffered Jorgen to testify that the version of the Bodum 3-Cup French Press it sought to introduce into evidence was an accurate example of the product as it existed prior to the patents-in-suit. According to Bodum, Jorgen would have testified that the design of the Bodum 3-Cup French Press has not changed in any material respect since 1982, and that it includes: (1) a carafe with a 2:1 height to diameter ratio; and (2) a plunger mechanism almost identical to that disclosed in the patents-in-suit.

To corroborate Jorgen's testimony, Bodum intended to offer drawings of the carafe and pages from its catalogs – all of which predated the patents-in-suit. According to Bodum, the drawings and catalogs show that the Bodum 3-Cup French Press has the dimensional requirements and plunger disclosed in the patents-in-suit, and that

those features were present in the model that pre-dated Meyer's patents. Although Meyer convinced the district court that Bodum's reliance on the catalogs and drawings was an attempt to establish those documents as prior art to get around the court's prior orders limiting the scope of prior art admissible at trial, it is clear that Bodum was relying on those documents to corroborate Jorgen's testimony – not as independent prior art. Given this corroborating evidence, the *Barbed Wire* doctrine would not have barred Jorgen's testimony.

Finally, we agree with Bodum that, given the simplicity of the technology involved, the jury could have considered the Bodum 3-Cup French Press, other documents disclosed during discovery, and lay testimony to reach its decision regarding obviousness. This is not a situation where Bodum sought to have a lay witness give his own opinion regarding invalidity. Indeed, as counsel for Bodum explained to the district court: "we are not asking them to give an opinion. Mr. Bodum is going to testify about facts. Was this [3-Cup French Press] on sale? Yes. Is it – was it sold in 1982? Yes." Tr. of Proceedings held on Nov. 10, 2010, *Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, No. 06-cv-6329 (N.D. Ill. Apr. 29, 2011), ECF No. 267 at 460:18-20. In these circumstances, we see no problem with having Bodum's CEO of thirty-six years testify to factual matters within his personal knowledge where those facts are supported by corroborating documentation.

Accordingly, we hold that the district court erred in granting Meyer's motion *in limine* barring Jorgen Bodum from testifying as to the Bodum 3-Cup French Press and the related drawings and catalogs. This error – coupled with each of the district court's evidentiary errors discussed above – had the cumulative effect of preventing Bodum from presenting the substance of its obviousness defense. The district court's exclusion of Bodum's primary

exhibits and related testimony resulted in a one-sided trial and we find that the court's errors were not harmless. On remand, the court should permit Jorgen to testify as to those matters within his personal knowledge with the corroborating documentation Bodum has identified and previously disclosed during discovery.

### C. Inequitable Conduct

Prior to trial, the district court granted Meyer's motion *in limine* to bar Bodum from presenting evidence in support of its inequitable conduct defense. Specifically, the court found that Bodum "failed to meet the demanding requirements" to prove inequitable conduct. *Meyer*, 2010 U.S. Dist. LEXIS 56168, at *9. Bodum filed a motion asking the court to reconsider its decision. In that motion, Bodum argued that the court erred in transforming Meyer's request to limit evidence into a motion for summary judgment of no inequitable conduct without giving Bodum a chance to introduce all evidence that would be relevant to the court's decision. The court denied Bodum's motion to reconsider in a minute entry on August 4, 2010, and Bodum was barred from presenting any evidence regarding inequitable conduct at trial.

On appeal, Bodum argues that the district court erred by dismissing its affirmative defense of inequitable conduct on a motion *in limine*. In response, Meyer argues that, even if the district court erred, that error was harmless because there is no right to a jury trial on inequitable conduct.

As previously noted, the exclusion of evidence on a motion *in limine* is an evidentiary ruling reviewed for an abuse of discretion. *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1362 (7th Cir. 1996). The Seventh Circuit has held that a motion *in limine* is not the appropriate vehicle for weighing the sufficiency of

the evidence. Specifically, in *Mid-America*, the court stated that, while argument regarding the sufficiency of the evidence "might be a proper argument for summary judgment or for judgment as a matter of law, it is not a proper basis for a motion to exclude evidence prior to trial." *Id.* at 1362-63 (affirming the district court's decision denying a motion *in limine* to exclude evidence of lost profits and noting that the "determination as to whether future profits were within the contemplation of the parties when contracting necessarily turns on the specific facts established at trial").

After careful review of the record, we conclude that the district court erred in addressing the sufficiency of Bodum's inequitable conduct defense on an evidentiary motion. We agree with Bodum that the district court essentially converted Meyer's motion *in limine* into a motion for summary judgment. In doing so, the court did not allow for full development of the evidence and deprived Bodum of an opportunity to present all pertinent material to defend against the dismissal of its inequitable conduct defense. Although both parties argue the merits of Bodum's inequitable conduct defense on appeal, we need not address those arguments at this stage. Because we conclude that it was procedurally improper for the court to dispose of Bodum's inequitable conduct defense on a motion *in limine*, we reverse the court's decision and remand for further proceedings.

## D. Willfulness

The jury found in favor of Meyer on the issue of willfulness. After the jury verdict, Bodum filed a renewed motion for JMOL that it did not willfully infringe the patents-in-suit. On March 14, 2011, the district court denied Bodum's motion in an oral ruling on the record and entered a minute entry to that effect. The court later

granted Meyer's motion to enhance damages and award Meyer its attorney fees, stating that: (1) "the jury's finding of willfulness implies that Bodum was aware of Meyer's products and, as already indicated, Bodum copied those products in every relevant way"; and (2) there was "serious trial misconduct on Bodum's part" including that "Bodum moved to allow their lay witnesses to testify about asserted prior art that this Court had previously excluded because those items had not been designated as relevant prior art by Bodum's retained expert." *Decision Awarding Attorney Fees*, 764 F. Supp. 2d at 1008-09.

On appeal, Bodum argues both that the court erred in denying its motion for JMOL of no willful infringement, and that enhanced damages and attorney fees are not warranted. Given our decision to remand this case for a new trial to address infringement and invalidity, we vacate the jury's verdict of willfulness and the district court's decision denying Bodum JMOL that it did not willfully infringe the patents-in-suit. On remand, *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003 (Fed. Cir. 2012), may be a helpful starting place for any future analysis of willfulness.

Because we vacate the jury's finding of willfulness, we also vacate the district court's decision awarding enhanced damages to Meyer. *See i4i*, 598 F.3d at 858 ("A finding of willful infringement is a prerequisite to the award of enhanced damages."). With respect to attorney fees, the district court based its decision, at least in part, on the willfulness verdict and Bodum's alleged litigation misconduct in its presentation of evidence. Because we have herein reversed the district court's evidentiary rulings and vacated the willfulness verdict, we also vacate the award of attorney fees.

CONCLUSION

For the foregoing reasons, we:

(1) reverse the district court's decision granting summary judgment that Bodum's Version 1 frother infringed the patents-in-suit;

(2) reverse the district court's decision granting summary judgment that Bodum's Version 2 frother infringed the '122 Patent;

(3) reverse the district court's decisions precluding Bodum from introducing prior art that was disclosed during discovery and preventing Jorgen Bodum from testifying as to the Bodum 3-Cup French Press and other prior art evidence;

(4) reverse the district court's decision barring Bodum's expert from testifying on the issue of obviousness;

(5) reverse the district court's decision precluding Bodum from introducing any evidence of inequitable conduct;

(6) vacate the district court's decision denying Bodum JMOL that it did not willfully infringe the patents-in-suit and therefore vacate the jury's verdict of willfulness; and

(7) vacate the district court's decision enhancing damages and awarding attorney fees to Meyer.

This case is remanded for further proceedings consistent with this opinion.

## REVERSED-IN-PART, VACATED-IN-PART, and REMANDED

COSTS

Costs to Bodum.

# United States Court of Appeals
# for the Federal Circuit

---

**MEYER INTELLECTUAL PROPERTIES LIMITED
AND MEYER CORPORATION, U.S.,**

*Plaintiffs-Appellees,*

**v.**

**BODUM, INC.,**

*Defendant-Appellant.*

---

2011-1329

---

Appeal from the United States District Court for the Northern District of Illinois in case no. 06-CV-6329, Judge Milton I. Shadur.

---

DYK, *Circuit Judge*, concurring.

While I agree with and join the thorough majority opinion, in looking at this case from a broader perspective, one cannot help but conclude that this case is an example of what is wrong with our patent system. The patents essentially claim the use of a prior art French press coffee maker to froth milk. Instead of making coffee by using the plunger to separate coffee from coffee grounds, the plunger is depressed to froth milk. The idea of frothing cold milk by the use of aeration rather than steam is not new as reflected in the prior art Ghidini patent. Under the Supreme Court's decision in *KSR International Co. v. Teleflex, Inc.*, 550 U.S. 398, 420

(2007), and its predecessors, it would be reasonable to expect that the claims would have been rejected as obvious by the examiner, and, if not, that they would have been found obvious on summary judgment by the district court. But no such thing. The parties have spent hundreds of thousand of dollars and several years litigating this issue, and are invited by us to have another go of it in a second trial. Such wasteful litigation does not serve the interests of the inventorship community, nor does it fulfill the purposes of the patent system.